**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| DIANE GOLDBERGER, Individually and On Behalf of All Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 6:05-cv-1810-ACC-DAB |
| | : | |
| v. | : | |
| | : | |
| FARO TECHNOLOGIES, INC., SIMON RAAB, GREGORY A. FRASER, and BARBARA R. SMITH, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

[Additional Captions Appear On Next Page]

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF KORNITZER CAPITAL MANAGEMENT, INC. FOR (1) CONSOLIDATION OF RELATED CASES, (2) APPOINTMENT AS LEAD PLAINTIFF, AND (3) APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL**

---

SEAN BELFI, on Behalf of Himself and                  :
all others Similarly Situated,                        :
                                                      :
                    Plaintiff,                        :       Civil Action No. 6:06-cv-0008-ACC-DAB
                                                      :
        v.                                            :
                                                      :
FARO TECHNOLOGIES, INC., SIMON                        :
RAAB, GREGORY A. FRASER, and                          :
BARBARA R. SMITH,                                     :
                                                      :
                    Defendants.                       :
_____:
                                                      :
ERIK BURRUS, Individually and On                      :
Behalf of All Others Similarly Situated,              :
                                                      :
                    Plaintiff,                        :       Civil Action No. 6:06-cv-0016-ACC-DAB
                                                      :
        v.                                            :
                                                      :
FARO TECHNOLOGIES, INC., SIMON                        :
RAAB, GREGORY A. FRASER, and                          :
BARBARA R. SMITH,                                     :
                                                      :
                    Defendants.                       :
_____:
                                                      :
ANTHONY R. JOHNSON, Individually                      :
and On Behalf of All Others Similarly                 :
Situated,                                             :
                                                      :
                    Plaintiff,                        :       Civil Action No. 6:06-cv-0057-ACC-DAB
                                                      :
        v.                                            :
                                                      :
FARO TECHNOLOGIES, INC., SIMON                        :
RAAB, GREGORY A. FRASER, and                          :
BARBARA R. SMITH,                                     :
                                                      :
                    Defendants.                       :
_____:

I.      **INTRODUCTION**

Kornitzer Capital Management, Inc. ("KCM" or "Movant") respectfully submits this memorandum of law in support of its motion for consolidation, appointment as lead plaintiff, and for approval of its selection of lead counsel.  As an institutional investor, KCM is uniquely qualified to serve as lead plaintiff on behalf of the class proposed in the above-referenced actions and is precisely the type of investor that Congress had in mind when it passed the Private Securities Litigation Reform Act ("PSLRA") in 1995.  The legislative history of the PSLRA reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter alia*, such investors will possess substantial business acumen and, motivated by a significant financial interest in the outcome of the action, "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995).  See Vincelli v. National Home Health Care Corp., 112 F.Supp.2d 1309, 1314 (M.D. Fla. 2000) ("The PSLRA ensures that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation") (internal quotation and citation omitted).  As explained below, appointment of KCM as lead plaintiff in this consolidated securities action will fulfill the goal of the PSLRA.

Presently pending before this Court are at least four related securities class action lawsuits (the "Actions") brought on behalf of all of those persons or entities that have purchased or otherwise acquired the publicly-traded securities of FARO Technologies, Inc. ("FARO" or the "Company") between May 6, 2004 and November 3, 2005 (the "Class Period").  Each of the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). In addition, all of the Actions name as Defendants FARO, the Company's two co-founders – Simon Raab ("Raab"), who is the Company's Chairman of the Board and Chief Executive Officer (and from 1996 to 2004, also served as FARO's President) and Gregory A. Fraser ("Fraser"), who is the Company's Secretary and Treasurer and, since 1997, has been FARO's Executive Vice President – and Barbara R. Smith ("Smith"), FARO's Senior Vice President and Chief Financial Officer.

As discussed below, consolidation of the four above-captioned actions is appropriate because each alleges substantially identical claims based upon similar factual allegations against the same Defendants. In addition, because Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired FARO securities during the Class Period, it should be appointed as lead plaintiff. Movant has also selected and retained and the Edgar Law Firm LLC (the "Edgar Firm") and Shepherd Finkelman Miller & Shah, LLC ("SFMS") to serve as its counsel, both of which have extensive experience in prosecuting securities fraud and other complex litigation matters, and that selection should be approved.

## II.    STATEMENT OF FACTS[1]

FARO, a Florida corporation with its principal offices in Lake Mary, Florida, develops and markets software and devices that, *inter alia*, permit manufacturers to perform three-dimensional inspections of parts and assemblies on their factory floors. Complaint, ¶¶ 2, 15. The Company sells its products worldwide through its direct sales force to a premier roster of

---

[1]These facts are based upon the complaint filed on December 6, 2005 in the first of the Actions, *Goldberger v. FARO Technologies, Inc., et al.*, Case No. 6:05-cv-1810-ACC-DAB (the "Complaint").

companies in the automotive, aerospace, and heavy equipment industries.  Complaint, ¶¶ 24-25.

FARO's stated goal is to allow these customers, such as Audi, Boeing, and Caterpillar, to

increase productivity and profitability through the elimination of manufacturing errors, including

inventory waste.  Complaint, ¶¶ 2, 29.

Ironically, inventory is allegedly one of FARO's current problems.  Among other things,

the Complaint alleges that FARO failed to implement adequate inventory accounting practices

and internal controls which adversely impacted the Company's finances and its ability to fill

rapidly increasing orders for its products.  Complaint, ¶5.  The Complaint also alleges that

Defendants were aware (or consciously disregarded) that FARO's growth was quickly

approaching the limit of the Company's capacity to accommodate the expansion, both in terms of

its ability to manufacture in accordance with forecasts and to coordinate its production

capabilities with aggressive global sales activities.  Complaint, ¶¶ 34, 37.  Overall, throughout

the Class Period, there was a persistent failure by Defendants to disclose the inadequacies of

FARO's own internal controls, and that corporate compliance controls were similarly deficient.

Complaint, ¶ 34.

While investors were unaware of FARO's increasing inability to keep pace with its

increasing sales, the Complaint alleges that Defendants Raab and Simon took advantage of the

artificially-inflated price of FARO stock and sold almost 1.5 million of their own shares for

proceeds of over $40 million.  Included in these proceeds were sizeable gains from complicated

forward-sales transactions with Bank of America whereby, as described by Defendant Fraser, he

and Defendant Raab were able to enjoy "the best of both worlds" (*i.e.*, the receipt of cash (albeit

discounted) with the potential for more gain if the price of FARO stock later increased).

Complaint, ¶¶ 6, 41, 44-46.  During the Class Period, Defendants were also able to use the Company's artificially inflated stock as collateral for the acquisition of a privately held German company, iQvolution.  Complaint, ¶¶ 53-54.

Furthermore, because FARO was in the process of selecting and/or implementing a company-wide computerized tracking system (or enterprise resource planning ("ERP") system), Defendants were aware of the Company's deficient inventory controls and accounting procedures.  In order to continue to conceal this "auditing dilemma," on November 18, 2004, FARO announced the dismissal of its principal accountants, Ernst & Young LLP, in favor of Grant Thornton LLP.  Complaint, ¶¶ 48-52.

Following an incomplete disclosure in mid-July, 2005, in which FARO lowered expectations for second quarter 2005 earnings per share but failed to explain the extent of the Company's order fulfillment problems or issues facing its implementation of the ERP system, Complaint, ¶¶ 61, 63, the Company again was forced to lower expectations on November 3, 2005.  In that statement, issued after the close of trading, FARO conceded, *inter alia*, that it had "processing problems relating to the implementation of our new accounting and inventory management systems" which would cost the Company to incur at least $1.6 million in inventory costs.  Complaint, ¶¶ 10, 68.  As a result of the Company's after-hours announcement on November 3rd, the price of FARO common stock declined significantly, from a closing price of $22.38 before the news to $17.99 on exceptionally heavy volume the next trading day, and then, after an intervening weekend, to $16.50 on November 7, 2005.[2]

---

[2]Based upon KCM's investigation, which is continuing, it believes that there may be good and sufficient cause to expand the Class Period until and through January 19, 2006, at which time FARO lowered guidance for the fourth quarter of 2005 (ending on December 31, 2005) because

III.    **ARGUMENT**

A.    **The Actions Should Be Consolidated For All Purposes.**

Consolidation is appropriate where there are actions involving common questions of law

or fact.  See Fed. R. Civ. P. 42(a); Local Rule 1.04(b).  Pending before this Court are four related

Actions, each of which asserts class claims for violation of the Exchange Act on behalf of those

who purchased or otherwise acquired FARO securities during the Class Period.  All the Actions

name FARO, Raab, Fraser, and Smith as Defendants and involve the same factual and legal

issues – specifically, whether the plaintiffs purchased or otherwise acquired FARO publicly

traded securities at prices which were artificially inflated as a result of Defendants' false and

misleading statements, and whether Defendants' acts violate Sections 10(b) and 20(a) of the

Exchange Act and SEC Rule 10b-5.  Accordingly, the test for consolidation is met here.  *See,*

*e.g., Hargett v. Alley Federal Savings Bank*, 60 F.3d 754, 765-766 (11th Cir. 1995) ("The proper

solution to problems created by the existence of two or more cases involving the same parties

and issues, simultaneously pending in the same court, would be to consolidate them under Rule

42(a)") (citation omitted); *In re Sunbeam Sec. Litig.*, No. 98-8258-CIV, 1998 WL 1990884, at *2

(S.D. Fla. 1998) ("Consolidation of related complex actions, and securities cases in particular, is

commonplace and an effective use of judicial resources") (citation omitted); *In re Cendant Corp.*

*Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("[C]onsolidation is common in federal securities class

action cases").  Moreover, consolidation will result in substantial efficiencies for the Court and

_____

of substantially higher selling, general and administrative ("SG&A") expenses, as well as income
taxes, which resulted in $2.6 million in additional expenses beyond those previously forecast.
Following this shocking disclosure, the price of FARO common stock fell $5.30 per share with
trading volume of over 2.8 million shares on January 20, 2006 alone – trading that was
approximately seven times more active than that which occurs in FARO shares on a normal day.

the parties.  Therefore, the above-captioned Actions should be consolidated for all purposes.

**B.    Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff.**

**1.    Movant Has Complied with the Notice and Filing Provisions of the PSLRA**

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(i).  *Cf., Ehlert v. Singer*, 185 F.R.D. 674, 676 (M.D. Fla. 1999) (discussing same process under the identical provisions of the Securities Act).  Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action.  This notice must inform class members of their right to file a motion for appointment as lead plaintiff.  See 15 U.S.C. §78u-4(a)(3)(A)(i).  Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, the notice in the first-filed Action was published on December 8, 2005, following the filing of the *Goldberger* complaint.   Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on February 6, 2006.  *See* 15 U.S.C. §78u- 4(a)(3)(A) and (B).  Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

The Certification of KCM, which is attached as Exhibit "A," states that a duly authorized representative of KCM has reviewed the allegations of the Complaints filed in these related

actions and that KCM is willing to serve as a representative on behalf of the class.  In addition,

KCM has selected and retained competent counsel to represent it and the class.  The firm

resumes for SFMS and the Edgar Firm are collectively attached as Exhibit "B."  Accordingly,

Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to

have its motion for appointment as lead plaintiff granted, and its selection of the Edgar Firm and

SFMS as lead counsel approved by the Court.

### 2.    Movant Suffered The Largest Loss Of Any Other Movant.

The PSLRA provides that within ninety (90) days after publication of the notice, the

Court shall consider any motion made by a class member and shall appoint as lead plaintiff the

member or members of the class that the Court determines to be most capable of adequately

representing the interests of class members.  See 15 U.S.C. §78u-4(a)(3)(B).  In determining the

"most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate
> plaintiff in any private action arising under this [Act] is the person
> or group of persons that
>
> >   (aa) has either filed the complaint or made a motion
> >   in response to a notice...;
> >
> >   (bb) in the determination of the court, has the
> >   largest financial interest in the relief sought by the
> >   class; and
> >
> >   (cc) otherwise satisfies the requirements of Rule 23
> >   of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally*, *Vincelli*, 112 F. Supp.2d at 1314; *Ehlert*, 185

F.R.D. at 676.  *See also Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 502 (S.D. Fla.

2002) ("The most important factor in determining the lead plaintiff is the amount of financial

interest claimed") (citations omitted).

During the Class Period, KCM purchased FARO common stock and suffered significant

losses.  Specifically, as reflected in its Certification (Exhibit "A"), KCM purchased 37,751 shares

of FARO common stock during the Class Period and thereby has suffered estimated losses in the

amount of $73,991.98,[3] which demonstrates KCM's financial interest in the outcome of this

action.  To the best of Movant's knowledge, there are no other applicants seeking appointment as

lead plaintiff that have a larger financial interest.  Therefore, KCM satisfies all of the PSLRA's

prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead

Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

### 3.      No Grounds Exist To Challenge KCM's Adequacy As Lead Plaintiff.

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."  In selecting a lead plaintiff, it

is well established that the Court should limit its inquiry to the typicality and adequacy prongs of

Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves

for class certification.  *See Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997

---

[3]Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a 90-day period beginning after the close of the class period.  *See* 15 U.S.C. § 78u-4(e)(1).  Here, the mean or average closing price for FARO common stock between November 4, 2005 and February 3, 2006 was $19.05 per share.  A chart reflecting the calculation of KCM's losses is attached as Exhibit "C" to this Memorandum.  Of course, to the extent that the Class Period is expanded until and through January 19, 2006, KCM's losses would be even greater.  So long as all movants for lead plaintiff utilize the same Class Period as the basis for calculating their losses, however, the question of whether an expanded Class Period should be plead in any Consolidated Amended Complaint is not material to this Motion.

WL 118429, at *2 (M.D. Fla. 1997) (court found that a "wide-ranging analysis under Rule 23 is not appropriate" at the lead plaintiff stage, and that the "inquiry ... focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy"); *Piven v. Sykes Enterprises, Inc.*, 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000) (same). KCM should be appointed lead plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical – but not identical – of those of the class. The typicality requirement is satisfied if the claims of the named plaintiff and the class have the "same essential characteristics." *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Piven*, 137 F.Supp.2d at 1306. Here, KCM satisfies this requirement because, just like all other class members, it purchased or otherwise acquired FARO common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and it suffered damages as a result of Defendants' conduct. Thus, KCM's claims arise out of the same course of events as those of other class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." In this Circuit, "[t]he determination of fair and adequate representation rests on two bases: common interests between representative and the class and a willingness and ability to vigorously prosecute the action." *See Fischler*, 1997 WL 118429, at *3 (citation omitted). While the proposed representative should not possess interests that are antagonistic to those of other class members, there is no requirement of a complete absence of conflict. *See*

*Vincelli*, 112 F.Supp.2d at 1314; *Fischler*, 1997 WL 118429, at *2.  "Only conflict that is 'serious and irreconcilable' will be fatal."  Id.  Of even greater importance, the proposed class representative "must demonstrate that she will vigorously prosecute the action by providing both adequate financing and competent counsel."  *See Vincelli*, 112 F.Supp.2d at 1314-1315 (citations omitted).

Here, KCM is an adequate representative of the class.  Like the class, KCM has sustained substantial damages as a result of its purchase or acquisition of FARO common stock and other publicly traded securities and would benefit from the same relief.   Furthermore, there is no evidence of any antagonism between KCM and the class.  In addition, as shown below, Movant's proposed lead counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Having suffered significant losses, KCM will also be motivated to vigorously prosecute this action.  Thus, KCM satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## C.   The Court Should Approve KCM's Choice of Counsel.

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent.  KCM has selected the Edgar Firm and SFMS to serve as co-lead counsel in this case.  Both SFMS and the Edgar Firm have substantial experience in the prosecution of shareholder, securities and other complex litigation, and have the resources necessary to efficiently conduct this litigation.  Accordingly, the Court should approve KCM's selection of co-lead counsel.

-10-

IV.        **CONCLUSION.**

For all the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate

these actions; (ii) appoint KCM as lead plaintiff in this consolidated action; and (iii) approve

Movant's selection of Shepherd, Finkelman, Miller & Shah, LLC and the Edgar Law Firm LLC

to serve as co-lead counsel.

<div style="margin-left:40%">

Shepherd, Finkelman, Miller & Shah, LLC

By: /s/ Scott R. Shepherd
    Trial Counsel
    Scott R. Shepherd
    Fla. Bar No. 069655
    4400 North Federal Highway
    Lighthouse Point, Florida  33064
    (954) 943-9191
    (954) 943-9173 (facsimile)

    John M. Edgar
    John F. Edgar
    Edgar Law Firm LLC
    4520 Main Street, Suite 1650
    Kansas City, Missouri  64111
    (816) 531-0033
    (816) 531-3322 (facsimile)

    James E. Miller
    Patrick A. Klingman
    Karen M. Leser
    Shepherd, Finkelman, Miller & Shah, LLC
    65 Main Street
    Chester, Connecticut  06412
    (860) 526-1100
    (860) 526-1120 (facsimile)

</div>

James C. Shah
Nathan Zipperian
Shepherd, Finkelman, Miller & Shah, LLC
35 East State Street
Media, Pennsylvania 19063
(610) 891-9880
(610) 891-9883 (facsimile)

Attorneys for Movant,
Kornitzer Capital Management, Inc.